UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,          Criminal Case No. 11-20052
                                        Civil Case No. 16-12869
                                        HON. DENISE PAGE HOOD

v.

VISHNU PRADEEP MEDA,

    Defendant-Petitioner.

_____/

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE [#197];
ORDER DISMISSING CIVIL CASE NO. 16-12869;
and
ORDER DENYING CERTIFICATE OF APPEALABILITY**

**I. BACKGROUND**

On April 2, 2013, a jury found Defendant Vishnu Pradeep Meda ("Meda") guilty on one count of Conspiracy to Commit Health Care Fraud, two counts of Health Care Fraud, and two counts of False Statements Relating to Health Care Matters. (Doc # 91) The jury found Meda not guilty on one count of Health Care Fraud and one count of False Statements Relating to Health Care Matters. *Id.* Meda was sentenced to a term of 46 months of imprisonment, followed by a term of 3 years of supervised release, and $840,550.42 in restitution. (Doc # 130; Doc # 180) Meda filed a Notice of Appeal on November 22, 2013. (Doc # 123) On

December 23, 2015, the Sixth Circuit issued an Opinion affirming Meda's conviction and sentence. (Doc # 192) The Sixth Circuit issued a Mandate on February 5, 2016. (Doc # 194) Meda appealed to the Supreme Court, filing a petition for a writ of certiorari on March 7, 2016. (Doc # 195) The Supreme Court denied Meda's petition on April 4, 2016. (Doc # 196) On August 4, 2016, Meda filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel during *voir dire*. (Doc # 197) The Government filed a Response on September 26, 2016. (Doc # 202) Meda filed a Reply on October 14, 2016. (Doc # 203)

## II. ANALYSIS

### A. Standard of Review

Section 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). Motions brought under Section 2255 are subject to a one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996, generally running from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2253(f)(1); *Dunlap v. United States*, 250 F.3d 1001, 1004-05 (6th Cir. 2001). As an initial matter, the Court notes that Meda' Motion was timely filed within the limitations period.

Under the Sixth Amendment, a defendant has a right to "have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a right to

"reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id.* "There is a strong presumption that legal counsel is competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). In addition, a "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The defendant bears the burden of showing that counsel was so deficient and that prejudice resulted from counsel's errors. *Id.* at 686-87.

### B. Whether Defense Counsel Provided Ineffective Assistance During *Voir Dire*

Meda argues that Defense Counsel was ineffective during *voir dire* because he failed to ask prospective jurors whether they or their family members or close friends were participants in the Government Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Health Care Provider Insurance. Meda argues that Defense Counsel failed to reveal any personal bias or prejudice the prospective jurors might have had against Meda for being accused of defrauding the health care programs they may have had a financial interest in. Meda asserts that at least two jurors were biased and prejudiced against him "based on their actions unnoticed by the trial judge."

The Government responds that Meda's claim is baseless because the Court and the Government had already asked prospective jurors about their participation in Medicare and feelings on Medicare during *voir dire*. The Government notes that Medicare was the only entity identified in the Indictment and Superseding Indictment (which do not identify Government Health Care Programs, Medicaid, or Blue Cross and Blue Shield). The Government argues that Meda was not prejudiced by any failure to uncover information regarding bias against Meda for defrauding Medicare. The Government notes that Defense Counsel as well as

4

counsel for Meda's co-defendants struck various potential jurors who were retirees, beneficiaries of Medicare, or had other Medicare experience. The Government further argues that Meda fails to allege any actual bias on the part of any specific juror.

The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to an impartial and unbiased jury. *Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009). "Among the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury using *voir dire* to identify and ferret out jurors who are biased against the defense." *Id.* (internal quotations and citation omitted). "Counsel is also accorded particular deference when conducting *voir dire*. An attorney's actions during *voir dire* are considered to be matters of trial strategy." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). "Few decisions at trial are as subjective or prone to individual attorney strategy as juror *voir dire*, where decisions are often made on the basis of intangible factors." *Holder*, 588 F.3d at 342. To establish ineffective assistance of counsel, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes*, 258 F.3d at 457.

To maintain a claim that a biased juror prejudiced him, a defendant must show that the juror was actually biased against him and that a fair trial was impossible. *Hughes*, 258 F.3d at 458; *Holder*, 588 F.3d at 339. Even a juror's express doubt as to his own impartiality on *voir dire* does not necessarily entail a finding of actual bias. *Holder*, 588 F.3d at 339. The standard for juror impartiality as explained by the Supreme Court is as follows.

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impressions or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 723 (1961). "A district court may rely upon juror assurances of impartiality in deciding whether a defendant has satisfied his burden of proving actual prejudice." *Hughes*, 258 F.3d at 459-60.

During *voir dire* in this case, the Court made clear that the case involved health care fraud charges, and that it was necessary to find out if any prospective jurors had opinions or personal experiences that could influence them for or against the prosecution, Defendant, or any witness. (Doc # 182, Pg ID 6525-28) The Court asked all prospective jurors if they received Medicare. *Id.* at 6544. At the beginning of *voir dire*, the Government asked as follows.

> I'm going to ask general questions and if anybody just go ahead and raise your hand. Now, you heard from the

6

> Judge this case is about Medicare and you heard from me it is about home health care. Does anyone have any strong feelings one way or another about Medicare generally? I know it is the news and things are happening, do you have any particular feeling about Medicare whether it is positive or negative? Again, does anybody have any particular strong feelings about Medicare fraud one way or the other? Can I ask has anybody seen any news articles or anything relating to Medicare fraud cases? No one. Okay.

*Id.* at 6563-64. The Government continued its questioning. Counsel for Meda's co-defendant then questioned the prospective jurors. Meda's attorney then had the opportunity to question them and began as follows.

> Good morning. As Ms. Stanyar said, this is your opportunity to talk to us. And at this point going third, much of my thunder has probably been taken away, so I just have a few questions for you. . . . I know all of you when you took the oath said you understood it and swore to follow the instructions of the Court and is there, at this point, after all the questions by Ms. Dick, the questions by Ms. Stanyar, the questions that the Judge gave you is there anyone that has a doubt that they would be able, if they're picked for this jury, to follow the rules of being a juror? I don't see any hands.

*Id.* at 6586-87.

*Voir dire* continued, and the Government asked each prospective juror about any particular strong feelings about Medicare programs. *Id.* at 6563-64, 6060, 6621, 6628-29, 6635-36, 6643, 6652-53, 6669, 6679, 6693, 6701, 6713, 6717-18, 6730-31, 6736, 6743, 6753. The Court and all attorneys asked several follow up questions regarding receipt of Medicare benefits, employment histories in the

7

health care field, and experiences with home health care (among other areas) of the prospective jurors and those close to them. Defense Counsel and counsel for Meda's co-defendant went on to strike several prospective jurors who were retired, received Medicare benefits, or had experience with Medicare and/or home health care. *Id.* at 6632, 6639, 6644, 6674, 6689, 6694, 6714, 6719, 6744.

After reviewing the parties' arguments, briefs, and the record, the Court concludes that Defense Counsel's performance during *voir dire* was reasonable. This case did not involve Government Health Care Programs, Medicaid, or Blue Cross and Blue Shield, and Defense Counsel made a reasonable strategic choice not to ask about these unrelated entities. The Court finds that Defense Counsel's choice not to repeat questions regarding feelings on Medicare that had already been asked by the Court and/or the Government was also reasonable and strategic. Under these circumstances, Meda cannot overcome the presumption that Defense Counsel's decision not to ask prospective jurors whether they or those close to them were participants in Government Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Health Care Provider Insurance was sound trial strategy because doing so would not have been advantageous.

Even if the Court found that Defense Counsel's performance was somehow deficient on *voir dire*, in light of the record, the Court concludes that Meda cannot show that that there is a reasonable probability that, but for Defense Counsel's

failure to ask prospective jurors whether they or those close to them were participants in Government Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Health Care Provider Insurance, the result of the proceedings would have been different. Put simply, Meda has failed to show that any juror was actually biased against him, or that a fair trial was impossible.

The record shows that all jurors indicated under oath that they could be fair and impartial with the knowledge that the case involved charges of health care fraud. The most that Meda asserts in his Motion is that he believes two jurors were biased and prejudiced against him "based on their actions unnoticed by the trial Judge. Something was wrong, the evidence was not overwhelming and I had been acquitted at my first trial[1] based on the same charges and evidence." The Court finds that Meda has provided no evidence or reason to doubt the validity of the jurors' assurances that they could be fair and impartial. Nor is there any reason to believe that any of the juror's opinions about Medicare or government health care programs were so strong as to undermine the reliability of their assurances that they could evaluate the case impartially.

---

[1] The Court notes that in October 2012, a jury acquitted Meda in a completely separate trial of other health care fraud charges brought against him in January 2010. In the instant case, on appeal, the Sixth Circuit concluded that Meda's indictment did not violate the Fifth Amendment's Double Jeopardy Clause because the alleged illegal conspiracy in the previous case was separate and distinct from the conspiracy in this case. (Doc # 192, Pg ID 7206)

Based on the above analysis, the Court concludes that Meda has failed to show that Defense Counsel's performance was deficient under either prong of the *Strickland* test. Meda is not entitled to relief under 28 U.S.C. § 2255.

## III. CERTIFICATE OF APPEALABILITY

Rule 22 of the Federal Rules of Appellate Procedure provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253(c)(2). Rule 11 of the Rules Governing Section 2255 Proceedings requires that a district court issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a court issues a certificate of appealability, the court must state the specific issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). 28 U.S.C. § 2255(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

For the reasons set for above, a certificate of appealability will not be issued in this case since the arguments raised by Meda in his Section 2255 Motion are without merit.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 11-20052, Doc # 197, filed August 4, 2016]** is **DENIED**.

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Civil Case No. 16-12869]** is **DISMISSED with prejudice.** The case is designated as **CLOSED** on the Court's docket.

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 15, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 15, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

11